

**FILED**
4/15/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**CR**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **1:22-CR-00227** |
| | ) | |
| v. | ) | Violations: 18 U.S.C. §§ 1343 and 1346 |
| | ) | and 26 U.S.C § 7206(1) |
| ANTHONY RAGUCCI | ) | |

**JUDGE FEINERMAN**
**MAGISTRATE JUDGE GILBERT**

<u>**COUNT ONE**</u>

The UNITED STATES ATTORNEY charges:

1. At times material to this information:

    a. The City of Oakbrook Terrace was a unit of local government located in the Northern District of Illinois.

    b. Defendant ANTHONY RAGUCCI was the Mayor of Oakbrook Terrace. As the Mayor of Oakbrook Terrace, RAGUCCI owed a duty of honest services to the citizens of Oakbrook Terrace. As an elected local official, RAGUCCI was required by law to annually file with the DuPage County Clerk's Office a "Statement of Economic Interests," which would disclose, among other things, certain income received by RAGUCCI during the prior calendar year. An elected local official who filed a Statement of Economic Interests was required to verify that the information contained in the filing was true, correct, and complete.

    c. Company A was a Chicago-area company that provided red-light cameras that enabled municipalities to enforce certain traffic violations and issue traffic-violation tickets.

    d. Individual A had a financial interest in Company A.

  e. Company B was a sales representative for Company A and was the designated Company A agent for the City of Oakbrook Terrace.

  f. Individual B-1 was the President of Company B until his death in or around January 2018.

  g. Individual B-2 and Individual B-3 were relatives of Individual B-1.

  h. On or about September 11, 2012, RAGUCCI, as Mayor of Oakbrook Terrace, executed an agreement with Company A for Company A to provide and operate red-light cameras in Oakbrook Terrace. Pursuant to this agreement, Company A periodically sent Oakbrook Terrace officials video segments of proposed traffic violations captured by Company A's red-light cameras, and Oakbrook Terrace officials subsequently decided which violations to approve. Company A obtained a portion of the proceeds generated from the approved and paid-for violations. The term of the agreement was for one year, with the mutual option to renew for two one-year periods. The agreement specified that it became effective on the date the first red-light camera was installed and became operational in Oakbrook Terrace.

  i. Pursuant to its agreement with Company A, Company B received a commission of fourteen percent of the revenue generated by Company A's agreement with Oakbrook Terrace. Company A made monthly electronic transfers to Company B, which transfers included commission payments related to Company A's agreement with Oakbrook Terrace.

j. Company A's red-light cameras first became operational in Oakbrook Terrace in or around August 2017.

k. Unbeknownst to RAGUCCI, Individual B-1, Individual B-2, Individual B-3, and others, Individual A began cooperating with federal law enforcement in or around January 2018.

2. Beginning no later than in or around 2016, and continuing until in or around September 2019, at Oakbrook Terrace, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANTHONY RAGUCCI,

defendant herein, together with Individual B-1, Individual B-2, and Individual B-3, devised, intended to devise, and participated in a scheme to defraud the City of Oakbrook Terrace and the people of Oakbrook Terrace of the intangible right to the honest services of RAGUCCI through bribery and kickbacks, which scheme is further described below.

3. It was part of the scheme that RAGUCCI solicited, agreed to accept, and accepted things of value from Individual A, Individual B-1, Individual B-2, and Individual B-3, including cash, in return for performing acts in his position as Oakbrook Terrace Mayor to benefit Company A, Company B, Individual A, Individual B-1, Individual B-2, and Individual B-3, including by signing one-year renewal agreements with Company A.

4. It was further part of the scheme that in or around late 2016, Individual B-1 offered to hire RAGUCCI's relative and pay the relative every month in exchange

for RAGUCCI's continued support of Company A and continued favorable action related to Company A's contractual relationship with Oakbrook Terrace.

5. It was further part of the scheme that, in or around January 2017, RAGUCCI told Individual B-1 that RAGUCCI'S relative could not go on Individual B-1's payroll. Individual B-1 told RAGUCCI that Individual B-1 would instead pay RAGUCCI $3,500 every month, with the payments based on revenue generated by Company A's red-light cameras in Oakbrook Terrace.

6. It was further part of the scheme that, after Company A's red-light cameras became operational in Oakbrook Terrace in or around August 2017, Individual B-1 began making monthly cash payments to RAGUCCI.

7. It was further part of the scheme that, shortly before Individual B-1 passed away in or around January 2018, RAGUCCI met with Individual B-1 and Individual B-2. Individual B-1 instructed Individual B-2 to continue making monthly payments to RAGUCCI.

8. It was further part of the scheme that, in or around January 2018, Individual B-2 and Individual B-3 began making cash payments to RAGUCCI based on the revenue generated by Company A's red-light cameras in Oakbrook Terrace.

9. It was further part of the scheme that on or about May 14, 2018, RAGUCCI solicited a cash payment from Individual A, in exchange for signing a one-year renewal agreement with Company A.

10. It was further part of the scheme that on or about June 19, 2018, RAGUCCI solicited a cash payment from Individual A, in exchange for signing a one-year renewal agreement with Company A.

11. It was further part of the scheme that on or about July 19, 2018, RAGUCCI solicited a $5,000 payment from Individual A, in exchange for signing a one-year renewal agreement with Company A.

12. It was further part of the scheme that in or around 2018, RAGUCCI, on behalf of Oakbrook Terrace, signed a one-year renewal agreement with Company A.

13. It was further part of the scheme that on or about August 8, 2018, RAGUCCI accepted $5,000 from Individual A, in exchange for signing a one-year renewal agreement with Company A.

14. It was further part of the scheme that on or about April 11, 2019, RAGUCCI solicited $7,500 from Individual A, in exchange for signing a one-year renewal agreement with Company A.

15. It was further part of the scheme that on or about May 7, 2019, RAGUCCI, on behalf of Oakbrook Terrace, signed a one-year renewal agreement with Company A.

16. It was further part of the scheme that on or about May 21, 2019, RAGUCCI accepted $7,500 from Individual A, in exchange for signing a one-year renewal agreement with Company A.

17. It was further part of the scheme that Individual B-2 and Individual B-3 continued making cash payments to RAGUCCI up to and including in or around September 2019.

18. It was further part of the scheme that, in order to conceal and avoid detection of the scheme, RAGUCCI did not report to the DuPage County Clerk's Office payments made to him by Individual A, Individual B-1, Individual B-2, and Individual B-3.

19. It was further part of the scheme that RAGUCCI, Company B, Individual B-1, Individual B-2, and Individual B-3 concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

20. On or about September 14, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANTHONY RAGUCCI,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an electronic transfer of approximately $100,305.31, a portion of which was a commission payment related to Company A's agreement with Oakbrook Terrace, from Company A's account at Schaumburg Bank & Trust to Company B's account at Pan American Bank that was processed through a server located outside of Illinois;

In violation of Title 18, United States Code, Sections 1343 and 1346.

## COUNT TWO

THE UNITED STATES ATTORNEY further charges:

On or about March 29, 2019, at Oakbrook Terrace, in the Northern District of Illinois, Eastern Division, and elsewhere,

ANTHONY RAGUCCI,

defendant herein, willfully caused to be made and subscribed via electronic submission, a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2018, which return was made under penalties of perjury and was filed with the Internal Revenue Service, which income tax return he did not believe to be true and correct as to every material matter, in that Line 6 stated that his total income was $95,830, when defendant knew that his total income substantially exceeded that amount;

In violation of Title 26, United States Code, Section 7206(1).

AMARJEET BHACHU
Digitally signed by AMARJEET BHACHU
Date: 2022.04.11 15:16:46 -05'00'

Signed by Amarjeet S. Bhachu
on behalf of the
UNITED STATES ATTORNEY