UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY RAGUCCI | No. 22CR 227<br><br>Judge Gary S. Feinerman |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant ANTHONY RAGUCCI, and his attorney, MICHAEL KREJCI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The information in this case charges defendant with honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346 (Count One), and filing a false tax return, in violation of Title 26, United States Code, Section 7206(1) (Count Two).

3.    Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

**<u>Charges to Which Defendant Is Pleading Guilty</u>**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the information: Count One, which charges defendant with honest services wire fraud, in violation of Title 18, United States Code, Section 1343 and 1346; and Count Two, which charges defendant with filing a false tax return, in violation of Title 26, United States Code, Section 7206(1).

**<u>Factual Basis</u>**

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct under Guideline § 1B1.3:

a.     With respect to Count One of the information:

Beginning no later than in or around 2016, and continuing until in or around September 2019, at Oakbrook Terrace, in the Northern District of Illinois, Eastern Division, and elsewhere, ANTHONY RAGUCCI, together with Individual B-1, Individual B-2, Individual B-3, devised, intended to devise, and participated in a scheme to defraud the City of Oakbrook Terrace and the people of Oakbrook Terrace of the intangible right to the honest services of RAGUCCI through bribery and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

Specifically, beginning in or around 2009, RAGUCCI was the elected Mayor of the City of Oakbrook Terrace. Company A was a Chicago-area company that provided

red-light cameras that enabled municipalities to enforce certain traffic violations and issue traffic-violation tickets. Company A obtained a portion of the proceeds generated from the approved-and-paid-for violations. On or about September 11, 2012, RAGUCCI, acting in his official capacity as mayor on behalf of the City of Oakbrook Terrace, signed an Agreement with Company A to provide red-light cameras in Oakbrook Terrace.

Company B was a sales representative for Company A and was the designated Company A agent for the City of Oakbrook Terrace. Pursuant to its agreement with Company A, Company B received a commission of fourteen percent of Company A's revenue generated by Company A's agreement with Oakbrook Terrace. Company A made monthly electronic transfers to Company B, which transfers included commission payments related to Company A's agreement with Oakbrook Terrace.

Individual B-1 was the President of Company B until his death in or around January 2018. Individual B-2 and Individual B-3 were relatives of Individual B-1. As part of the scheme, RAGUCCI solicited, agreed to accept, and accepted things of value from Individual A, Individual B-1, Individual B-2, and Individual B-3, including cash, in return for performing acts in his position as Oakbrook Terrace Mayor to benefit Company A, Company B, Individual A, Individual B-1, Individual B-2, and Individual B-3, including by signing one-year renewal agreements with Company A.

In or around late 2016, Individual B-1 offered to hire RAGUCCI's relative and offered to pay the relative every month in exchange for RAGUCCI's continued support

3

of Company A and continued favorable action related to Company A's agreement to provide services to Oakbrook Terrace. In or around January 2017, RAGUCCI told Individual B-1 that RAGUCCI's relative could not go on Individual A's payroll. Individual B-1 told RAGUCCI that Individual B-1 would instead pay RAGUCCI up to $3,500 every month, with the payments based on revenue generated by Company A's red-light cameras in Oakbrook Terrace.

In or around August 2017, Company A's red-light cameras became operational in Oakbrook Terrace. At that time, Individual B-1 began making monthly cash payments to RAGUCCI. Shortly before Individual B-1 passed away in or around January 2018, RAGUCCI met with Individual B-1 and Individual B-2. Individual B-1 instructed Individual B-2 to continue making monthly cash payments to RAGUCCI.

In or around January 2018, Individual B-2 and Individual B-3 began making monthly cash payments to RAGUCCI based on the revenue generated by Company A's red-light cameras in Oakbrook Terrace. In or around 2018, RAGUCCI signed a one-year renewal agreement with Company A on behalf of Oakbrook Terrace. On or about May 7, 2019, RAGUCCI signed another one-year renewal agreement with Company A on behalf of Oakbrook Terrace. Individual B-2 and Individual B-3 continued making cash payments to RAGUCCI up to and including September 2019. By September 2019, RAGUCCI had accepted at least $76,000 in payments from Individual B-1, Individual B-2, and Individual B-3.

4

Beginning in or around May 2018 and continuing until in or around May 2019, RAGUCCI solicited, agreed to accept, and accepted financial benefits from Individual A, who had a financial interest in Company A, in return for using RAGUCCI's official position as the Mayor of the City of Oakbrook Terrace to sign renewal letters extending Company A's contract to operate red-light cameras in Oakbrook Terrace. Unbeknownst to RAGUCCI, Individual A began cooperating with law enforcement in or around 2018.

On or about May 14, 2018, RAGUCCI met with Individual A at a restaurant in Oakbrook Terrace to discuss the renewal of Company A's contract. During the meeting, RAGUCCI asked Individual A, "Do you got a bonus for me? As soon as I sign this [Company A renewal letter]?" Later in the meeting, Individual A gave RAGUCCI a copy of Company A's renewal letter for Oakbrook Terrace and, referring to what RAGUCCI wanted for signing the letter, told RAGUCCI not to be shy. RAGUCCI said that he would not hold a campaign fundraiser until April 2019 and stated, "[I]t's too bad I can't have anybody write a check to my campaign. I don't want it from your company. If you can do it, you know." Individual A said "[W]e'll do it off the books," and RAGUCCI agreed. On or about June 19, 2018, RAGUCCI met with Individual A at a restaurant in Oakbrook Terrace and Individual A provided RAGUCCI with a copy of Company A's renewal letter. During the meeting, RAGUCCI asked Individual A, "[D]id you bring me a signing bonus?"

On or about July 19, 2018, RAGUCCI met with Individual A at a restaurant in Oakbrook Terrace. During the meeting, RAGUCCI stated, "I'm gonna sign the contract. Every year, I don't have to go to the [Oakbrook Terrace] Board with it or nothing. I do everything myself. If you could give me..." At the same time, RAGUCCI placed five fingers on the table, indicating that he wanted $5,000. On or about August 8, 2018, RAGUCCI met with Individual A, who provided RAGUCCI with an envelope containing $5,000 cash. RAGUCCI stated, "Every year, we'll just do it that way... The contract."

On or about April 11, 2019, RAGUCCI met with Individual A at a restaurant in Oakbrook Terrace. During the meeting, they discussed RAGUCCI's upcoming campaign fundraiser and a contribution that Individual A planned to make to RAGUCCI. RAGUCCI stated, "Can you give me when we do the signing? That's the nice part." Individual A asked RAGUCCI if Individual A should add the contribution to the $5,000 Individual A gave RAGUCCI when RAGUCCI signed the renewal letter for Company A. RAGUCCI stated, "No, if you give me, give it to me like 2500." Individual A said, "I just want to make sure you're alright, you're happy with everything.... We're [Company A is] going to continue to do business in Oakbrook Terrace." RAGUCCI stated, "No, no, no.... The yearly thing [$5,000 payment] is different."

On or about May 21, 2019, RAGUCCI met with Individual A at a restaurant in Oakbrook Terrace. During the meeting, RAGUCCI provided Individual A with a

6

signed renewal letter extending Company A's contract to operate red-light cameras in Oakbrook Terrace for a year. In exchange, Individual A gave RAGUCCI $7,500 in cash.

On or about September 14, 2018, RAGUCCI executed the scheme by knowingly causing to be transmitted in interstate commerce, by means of wire communication certain writings, signs, signals, and sounds, namely, an electronic transfer of approximately $100,305.31, a portion of which was a commission payment related to Company A's agreement with Oakbrook Terrace, from Company A's account at Schaumburg Bank & Trust to Company B's account at Pan American Bank that was processed through a server located outside of Illinois.

The total amount of money that RAGUCCI received as part of his criminal activity was at least $88,500.

      b.    With respect to Count Two of the information:

On or about March 29, 2019, at Oakbrook Terrace, in the Northern District of Illinois, Eastern Division, and elsewhere, ANTHONY RAGUCCI willfully caused to be made and subscribed via electronic submission, a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2018, which return was verified by written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that said return reported on Line 6 that his total income was $95,830, when defendant knew that he received

7

additional income of at least $42,200 that year in payments from his criminal activity, namely, bribery and kickbacks, which he used for his personal benefit. These payments increased his total income to at least $138,030, and RAGUCCI's conduct resulted in a federal income tax loss of approximately $10,129.

In addition, on or about April 9, 2018, RAGUCCI filed a false U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2017, in which he reported his total income as $90,210, and willfully failed to report his receipt of at least $10,900 in additional income that he received in cash bribes and kickbacks that he used for his personal benefit, and which resulted in a federal income tax loss of approximately $2,797.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and they are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000 or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further

understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.      Count Two carries a maximum sentence of 3 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than one year.

c.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 23 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200.

### Sentencing Guidelines Calculations

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law,

and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most-effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2018 Guidelines Manual.

b. **Offense Level Calculations.**

**Count One and Relevant Conduct**

i. The base offense level is 14, pursuant to Guideline § 2C1.1(a)(1) because defendant was a public official.

ii. The offense level is increased by 2 levels pursuant to Guideline § 2C1.1(b)(1) because the offense involved more than one bribe.

10

iii.    The offense level is increased by 6 levels pursuant to Guideline §§ 2C1.1(b)(2) and 2B1.1(b)(1)(D) because the value of the payments was more than $40,000 but less than $95,000.

iv.    The offense level is increased by 4 levels pursuant to Guideline § 2C1.1(b)(3) because the offense involved an elected official.

### Count Two and Relevant Conduct

v.    The base offense level is 10, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(C), because the tax loss was more than $6,500 but less than $15,000.

vi.    The offense level is increased by 2 levels pursuant to Guideline § 2T1.1(b)(1) because defendant failed to report income exceeding $10,000 in any year from criminal activity.

### Calculation of Offense Level

vii.    Pursuant to Guideline § 3D1.2, the offenses are not grouped and should be treated as separate groups. The group with the highest offense level has an offense level of 26. Pursuant to Guideline § 3D1.4(c), there is no increase in the offense level because the other group is nine or more levels less serious than the group with the highest offense level.

viii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and

11

if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

ix.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

d.     **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and they are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation, that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B) and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range in an amount to be determined at the time of sentencing. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure.

14

13.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a), as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Regarding restitution, defendant agrees to pay restitution to the United States Treasury arising from the offense conduct and relevant conduct set forth above, totaling $12,926, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant further understands that the Internal Revenue Service will use the amount of restitution ordered as a basis of a civil assessment under Title 26, United States Code, Section 6201(a)(4). Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in this criminal case.

16.     Defendant further agrees to pay restitution to the Illinois Department of Revenue arising from the offense conduct and relevant conduct set forth above, totaling $2,498, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664. Defendant understands that the amount of tax loss as calculated by the Illinois Department of Revenue may exceed the amount of tax due as calculated for restitution in this criminal case.

17.     The restitution referred to above shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $12,500 as compensation for government funds that defendant received during the investigation of the case. Defendant will receive credit for any money collected by the government prior to sentencing, including approximately $67,000 seized by the government on or about October 18, 2019, approximately $7,000 of which were marked bills provided to defendant by the government during the investigation.

19.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

20.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

21.     Defendant acknowledges that on or about November 21, 2019, administrative forfeiture proceedings were commenced against certain property, including approximately $60,000 in United States currency. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 227.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

24.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

25.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses, and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the

government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

26. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained to him those rights and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

27.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

28.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to

the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

30.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS): Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

23

32.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).   In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

33.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

34.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

24

35.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void, and neither party will be bound to it.

37.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5/23/22

_____
JOHN R. LAUSCH, JR.
United States Attorney

_____
JAMES P. DURKIN
Assistant United States Attorney

_____
ANTHONY RAGUCCI
Defendant

_____
MICHAEL KREJCI
Attorney for Defendant

26